UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDY M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21 C 2028 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| KILOLO KIJAKAZI,[1] Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Judy M. seeks to reverse the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Because the Administrative Law Judge ("ALJ") erred by failing to adequately consider her mental limitations in rendering his residual functional capacity ("RFC") determination, the Court reverses the ALJ's decision and remands this case to the Social Security Administration for further proceedings consistent with this Opinion.

**BACKGROUND**

**I.  Procedural History**

Born on August 22, 1955, Judy M. worked as a billing clerk from January 2003 to May 4, 2015. AR 45, 239, 291. Judy M. applied for DIB on May 10, 2018, originally alleging a disability onset date of April 1, 2014. AR 17. However, after consulting with counsel, she amended the onset date to August 21, 2015, the day before her sixtieth birthday. AR 17. The

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Social Security Administration ("SSA") denied her application both initially and on reconsideration. AR 88, 102. Judy M. requested a hearing before an ALJ at which she, represented by counsel, and an impartial vocational expert testified via telephone on July 1, 2020. AR 35–77. On August 19, 2020, the ALJ issued a written decision finding that Judy M. was not disabled during the relevant time period and denying her disability application. AR 17–29. Judy M. sought review of this decision by the Appeals Council. AR 235–38. On February 17, 2021, the Appeals Council declined to review the ALJ's decision, causing it to become the final decision of the Commissioner. AR 1–5; *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994) ("Because the Appeals Council denied review of Luna's application, the ALJ's decision became the final decision of the Secretary[.]"); 20 C.F.R. § 404.981. Judy M. now appeals the ALJ's August 2020 decision, arguing that the ALJ erred by failing to include mental limitations he found credible at step two of the sequential analysis within his RFC and in his hypothetical questions to the vocational expert. She also argues that 42 U.S.C. § 902(a)(3) is unconstitutional because it violates the separation of powers.

## II. Factual Background

Judy M. alleges that beginning on August 21, 2015, she could not work due to high blood pressure, fibromyalgia, depression, and spinal stenosis. AR 290, 322. Prior to her alleged disability onset, Judy M. worked as a billing clerk and documentation specialist. AR 45, 291. On April 1, 2016, Judy M. began working as a caregiver for her sister. AR 291. She worked 20 hours per week and was paid $10.50 per hour. AR 48, 291, 390–94. At the time of the July 2020 hearing before the ALJ, Judy M. was still working as a caregiver for her sister. AR 48. As a caregiver, Judy M. does many daily life tasks for her sister, including bathing her, feeding her, brushing her teeth, and helping her use the restroom. AR 48–49.

### III. Mental Health History

Judy M. was first diagnosed with depression in 2014. AR 536. On April 9, 2016, Judy M. was prescribed Cymbalta and Xanax for anxiety and depression. AR 21, 430. Later that year, she was also prescribed Paxil to treat her depression and anxiety, which she continued to take through 2020. AR 21, 440, 672.

To assist in assessing her claims, Judy M. underwent two consultative psychological evaluation. First, on November 20, 2018, Mark Langgut, Ph.D., a licensed clinical psychologist, performed a psychological assessment of Judy M. AR 518. Judy M. complained of depression ranking six on a scale of one-to-ten, which she explained was due to the pain she experienced from her other medical conditions. AR 519. After his evaluation, Dr. Langgut diagnosed Judy M. with dysthymic disorder. Second, on July 18, 2019, Judy M. had a follow-up psychological assessment with Joan Wise, Psy. D., a licensed clinical psychologist. Judy M. cried three times during the evaluation and continued to complain of depression. AR 536–38. Dr. Wise diagnosed Judy M. with depressive disorder, not otherwise specified. AR 538.

On January 9, 2019, Joseph Mehr, Ph.D., a state agency mental consultant, completed an RFC assessment. AR 27, 82. Dr. Mehr found that Judy M.'s dysthymic disorder was non-severe, and that she had mild limitations in adapting or managing herself. AR 82. On August 10, 2019, Clare McGinness, Ph.D., also a state agency mental consultant, completed a reconsideration RFC assessment. AR 27, 96. Dr. McGinness noted that Judy M. had "overall poor performance on [the mental state evaluation]," and that additional evidence that was not available to Dr. Mehr at the time of the initial RFC assessment noted diagnoses of depression and anxiety. AR 95–96. Dr. McGinness found that despite her depression and anxiety, Judy M. "continues to live an independent lifestyle including caring for her sister, driving, and reading as

3

a hobby." AR 96. On this basis, Dr. McGinness found that Judy M.'s mental health conditions were non-severe but noted mild limitations in three areas: (1) understanding, remembering, or applying information; (2) concentrating, persistence, or maintaining pace; and (3) adapting or managing oneself. AR 95.

### IV. Vocational Expert Testimony

On July 1, 2020, Judy M. appeared before the ALJ for a telephonic hearing regarding her application for DIB. At the hearing, Kari Seaver, a vocational expert, testified that Judy M.'s past work as a billing clerk was semiskilled and required a sedentary physical demand level, while her past work as a documentation specialist was semiskilled but required a light physical demand level. AR 74. The ALJ asked Seaver whether a hypothetical individual with the same RFC as Judy M. could perform her past relevant work as a billing clerk or documentation specialist. AR 74. Seaver testified that such an individual could perform Judy M.'s past relevant work as a billing clerk but not as a documentation specialist. AR 74. Judy M.'s attorney followed up and asked Seaver whether this hypothetical individual would be able to perform her past relevant work if the hypothetical individual was also "limited to simple and routine tasks." AR 76. Seaver testified that with this additional limitation, they would not be able to perform the past relevant work.

### V. The ALJ's August 2020 Decision

On August 19, 2020, the ALJ issued a written decision finding Judy M. was not disabled and denying her DIB. AR 17–29. Following the five-step analysis used by the SSA to evaluate disability, the ALJ found at step one that Judy M. had not engaged in substantial gainful activity since August 21, 2015, her alleged onset date. AR 20. The ALJ then proceeded to step two, finding that Judy M.'s fibromyalgia, obesity, and spine impairment constituted severe

impairments. AR 20–22. The ALJ further found that Judy M.'s depression and anxiety did not cause more than minimal limitations on her ability to perform basic work activities and thus were not severe. The ALJ evaluated the severity of Judy M.'s mental impairments using the four functional areas set forth in section 12.00 of the Listing of Impairments, *i.e.*, the paragraph B criteria, and found that Judy M. had no limitations in one functional area (interacting with others) and mild limitations in the other three: (1) understanding, remembering or applying information; (2) concentrating, persisting or maintaining pace; and (3) adapting or managing oneself. AR 20–21. The ALJ noted that his findings at this step were "not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3," and that the following RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." AR 22.

Despite finding at step two that Judy M. had several severe impairments (fibromyalgia, obesity, and spine impairment), at step three the ALJ found that none of Judy M.'s impairments met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22–23. After reviewing the record, the ALJ found that Judy M. had the RFC "to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she can frequently climb ramps or stairs, crouch, and kneel; frequently balance with a hand-held assistive device; and occasional [*sic*] climb ladders, ropes, or scaffolds, stoop, and crawl." AR 23. In reaching this conclusion, the ALJ found that the evidence supported a finding that Judy M.'s impairments caused the alleged symptoms, but found that her "statements about the intensity, persistence, and limiting effects of [her] symptoms" was "inconsistent because the claimant has been able to work part time caring for her sister." AR 24. Regarding her mental limitations, the ALJ found the state agency mental consultants' findings of mild mental limitations persuasive. AR 27–28. Based on

these findings and the RFC, the ALJ found at step four that Judy M. could perform her past relevant work as a billing clerk, rendering a step five analysis unnecessary. AR 28. On that basis, the ALJ concluded that Judy M. was not disabled and not entitled to benefits. AR 28.

## LEGAL STANDARD

### I. Standard of Review

In reviewing the denial of disability benefits, the Court "will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence." *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ---, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although the Court reviews the entire record, it does not displace the ALJ's judgment by reweighing facts or making independent credibility determinations. *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). But the Court may reverse and remand the ALJ's decision if the ALJ committed an error of law or based her decision on serious factual mistakes or omissions. *Id.* at 837. The Court also looks to "whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence," *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (citation omitted), but "[i]f a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required," *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citation omitted).

6

II. **Disability Standard**

To qualify for DIB, a claimant must show that she is disabled, meaning that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). To determine whether a claimant is disabled, the SSA uses a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4); *Kastner*, 697 F.3d at 646. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity during the relevant period. *See* 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ considers whether the claimant's impairments are severe and meet the twelve-month durational requirement. *Id.* §§ 404.1509, 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) meet or equal an impairment listed in the Social Security regulations. *Id.* § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App'x 1. If the claimant's impairment(s) meet or equal a listing and meet the duration requirement, the claimant is disabled; if not, the analysis continues, and the ALJ assesses the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iii), (e). At step four, the ALJ considers the claimant's RFC and determines whether the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform past relevant work, she is not disabled. *Id.* If she cannot, the ALJ proceeds to step five, where the ALJ determines whether a substantial number of jobs exist that the claimant can perform given his RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant can perform other work, she is not disabled; if he cannot perform other work, she is disabled. *Id.* § 404.1520(a)(4)(v). The

claimant bears the burden of proof at steps one through four, and the burden shifts to the government at step five. *Weatherbee*, 649 F.3d at 569.

## ANALYSIS

In seeking to overturn the ALJ's decision, Judy M. argues that the ALJ committed reversible error by failing to include mental limitations he found credible at step two within his RFC and hypothetical questions to the vocational expert and that the ALJ's decision is defective because 42 U.S.C. § 902(a)(3) is unconstitutional. The Court addresses these arguments in turn.

### I. Mental Limitations

Judy M. first argues that the ALJ failed to properly accommodate her mental limitations in his RFC finding. She argues that the ALJ was required to either accommodate the mental limitations he found at step two in his RFC or to explain why he was not including them. She argues that this case should be remanded because the ALJ failed to do either. The Commissioner does not take issue with the ALJ's finding that Judy M. had mild mental limitations but rather argues that the ALJ adequately explained why he did not include them in his RFC. Because the ALJ's RFC analysis does not contain a reasoned explanation for failing to accommodate Judy M.'s mild mental limitations, the Court remands this case to the SSA.

A claimant's RFC represents the maximum she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history and findings, the effects of treatment, reports of daily activities, and medical opinions. 20 C.F.R. § 404.1545(a)(3); SSR 96–8p, 1996 WL 374184, at *5. When determining a claimant's RFC, an ALJ must consider all medically determinable impairments, including those that are not severe. *Craft*, 539 F.3d at 676. An ALJ must also consider all the effects and limitations resulting from

8

those impairments. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) ("When determining an individual's RFC, the ALJ must consider all limitations that arise from medically determinable impairments."); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("An ALJ must consider the combined effects of all of the claimant's impairments; even those that would not be considered severe in isolation.").

Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* Although the ALJ's step two analysis is not an RFC finding, SSR 96-8p, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

Here, using the PRT, the ALJ found that Judy M. had mild limitations in three out of the four categories: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing oneself. AR 21. But despite these findings, when the ALJ made his RFC assessment at step four, he did not include any accommodation for Judy M.'s mild mental limitations. *See* AR 23–28. Nor did he set out a reasoned analysis for why Judy M.'s mental limitations, which he previously found legitimate,

9

did not require accommodation. Instead, his RFC assessment was limited to finding the state agency mental consultants' findings persuasive. AR 27–28. This is not sufficient analysis. *See Thomas G. v. Kijakazi*, No. 20-cv-5860, 2022 WL 4234967, at *5 (N.D. Ill. Sept. 14, 2022) (remanding where ALJ found mild limitations at step two, but RFC assessment limited to finding the state agency mental consultants' findings persuasive).

The ALJ's failure to adequately address Judy M.'s mental limitations in his RFC analysis and to determine what impact they had on her ability to perform her previous relevant work are grounds for remand. *See Alesia*, 789 F. Supp. 2d at 934; *see also Mark M. v. Kijakazi*, No. 20 C 05063, 2022 WL 17960687, at *4 (N.D. Ill. Dec. 27, 2022) ("Time and time again, courts in this District have remanded ALJ opinions identifying nonsevere mental impairments at step two that disappear without explanation when it comes time to craft the RFC before step four" and collecting cases).

The Commissioner argues that the ALJ "reasonably determined that [Judy M.] had the ability to work with no mental restrictions" and cited "ample evidence" of her "enduring mental capacity." Doc. 17 at 2. The ALJ's discussion of the "ample evidence," and the evidence the Commissioner primarily points to, however, was part of the ALJ's step two analysis, which is not an RFC assessment. SSR 96-7p, 1996 WL 374186, at *4. The ALJ explicitly stated that his step two analysis was "not a residual functional capacity assessment" and that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." AR 22. "While the Court generally reads the ALJ's decision as a whole, the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment" but "the Court will not overreach and ignore the ALJ's own words in

an effort to read the opinion as a whole." *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *3 (N.D. Ill. Apr. 8, 2022).

Further, while the ALJ's step two analysis does state that the "following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," AR 22, courts in this district have found this language to be "boilerplate" that is "insufficient to properly account for mild mental limitations without a more thorough discussion when crafting the RFC." *Mark M.*, 2022 WL 17960687, at *4 (citing *David K. v. Kijakazi*, No. 20-cv-1743, 2022 WL 2757695, at *5 (N.D. Ill. July 14, 2022)).

Although Judy M.'s mild limitations may not have required accommodation, as the Commissioner argues, the ALJ was at least required to explain why that is the case. *Kathy A. v. Kijakazi*, No. 20-cv-2387, 2022 WL 2758001, at *4 (N.D. Ill. July 14, 2022) ("Even if a mild limitation finding at step two does not necessarily equate to any RFC limitation, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." (citations and quotations omitted) (emphasis in original)). Even if the ALJ ultimately found Judy M.'s mental impairments did not prevent her from working, because his discussion at step four was limited only to crediting the state agency mental consultants' findings, the Court cannot determine whether that was the case. The ALJ failed to "articulate, at least minimally, his analysis of the evidence so that th[e] court can follow his reasoning." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Upon remand, the ALJ should explicitly discuss the impact that Judy M.'s mild mental limitations have on her ability to return to her past relevant work.

The Commissioner argues that Judy M.'s claims fail because she "offers no explanation about how her non-severe mental impairment causes any work-related limitations needing restriction in the RFC," Doc. 17 at 7, but this argument misses the point. The Commissioner is

11

correct that Judy M. bears the burden of producing evidence that supports her DIB claims. *See Anthony W.*, 2022 WL 1062334, at *4 (citing *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017)). But the ALJ already determined at step two that Judy M. had provided sufficient evidence to show mild mental functioning limitations in three of the four PRT categories. AR 21. The issue here is whether the ALJ accounted for those limitations in his RFC assessment. Because the Court cannot sufficiently determine that the ALJ did so, the Court remands this case to the SSA.

Judy M. also argues that the ALJ's hypothetical questions to the vocational expert were flawed because they failed to include her mental limitations or to discuss Judy M.'s vocational characteristics, such as age, education level, or work experience. She argues that if the ALJ had included her mental limitations in his RFC, the vocational expert would have found that Judy M. was incapable of performing her past relevant work. The ALJ would then have reached step five and assessed her vocational characteristics to determine whether she was capable of performing any other work in the national economy. Because this Court has remanded this case for the ALJ to explain whether Judy M.'s mental limitations should have been included in the RFC assessment, it would be premature to address these arguments.

**II.     Separation of Powers**

Judy M. argues, and the Commissioner agrees, that in light of the Supreme Court's decision in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), the structure of 42 U.S.C. § 902(a)(3), the statute providing for the appointment of the Commissioner, violates the separation of powers. *See* Doc. 17 at 10 ("The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers."). Judy M. argues that this constitutional defect requires a remand. While the Commissioner agrees that 42 U.S.C. § 902(a)(3) is

12

unconstitutional, she argues that a variety of legal doctrines, such as harmless error, de facto officer, the rule of necessity, and broad prudential considerations, provide that Judy M. is not entitled to relief simply because the statute violates the separation of powers. Because the Court has already found that remand is appropriate on other grounds, this Court declines to reach the separation of powers issue under the doctrine of constitutional avoidance. *See Rosalinda B. v. Kijakazi*, No. 2:20cv241, 2021 WL 5997979, at *10 (N.D. Ind. Dec. 20, 2021) (declining to reach constitutionality of 42 U.S.C. § 902(a)(3) where remand was appropriate on other grounds); *Ernestine L. v. Kijakazi*, No. 1:21cv139, 2022 WL 110240, at *5 (N.D. Ind. Jan. 12, 2022) (same); *Taffy v. Comm'r of Soc. Sec.*, No. C-21-5146, 2021 WL 4988717, at *6 (W.D. Wash. Oct. 27, 2021) (same).

## CONCLUSION

For the foregoing reasons, the Court denies the Commissioner's motion for summary judgment [16]. The Court reverses the ALJ's decision and remands this case to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

Dated: February 28, 2023

                                                                            _____
                                                                            SARA L. ELLIS
                                                                            United States District Judge